**United States District Court**
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVAN WEAVER, | ) Case No.: CV-12-01117 EJD (PSG) |
| Plaintiff, | ) **ORDER GRANTING PLAINTIFF'S** |
| v. | ) **MOTION TO COMPEL RESPONSES** |
| TAMPA INVESTMENT GROUP, LLC; and DOES 1-50, inclusive, | ) **(Re: Docket No. 31)** |
| Defendants. | ) |

Plaintiff Evan Weaver ("Weaver") moves to compel Defendant Tampa Investment Group, LLC ("TIG") to produce further responses to his first set of interrogatories and requests to produce documents. TIG opposes the motion. Having considered the parties' papers and oral arguments, the court GRANTS Weaver's motion to compel.

**I. BACKGROUND**

Weaver brought this action against TIG after it failed to purchase Weaver's shares of Twitter, Inc. ("Twitter"). Weaver was an early Twitter employee with common stock for which Twitter had a right of first refusal ("ROFR"). Weaver argues that TIG entered a binding agreement to purchase Weaver's Twitter shares for $20.85 per share, subject only to Twitter's ROFR. When Weaver notified Twitter of the proposed sale, Twitter opted not to exercise the ROFR, and,

1
Case No.: CV-12-01117 EJD (PSG)
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL RESPONSES

according to Weaver, he returned to TIG with the expectation it would purchase his shares. TIG did not buy the shares, and Weaver argues that TIG thereby breached a contract with him. TIG responds that the agreement was never binding. Weaver also contends that TIG breached the covenant of good faith and fair dealing and engaged in fraud in its dealings with him.

Weaver seeks discovery regarding arrangements between TIG and the broker that arranged the attempted sale, Halcyon Cabot Partners, Ltd ("Halcyon"). Weaver alleges, and TIG concedes, that TIG and Halcyon agreed to split a brokerage commission that Weaver would pay Halcyon whether TIG went through with the sale or Twitter exercised the ROFR. Weaver also seeks discovery regarding prospective investors TIG approached to fund the stock purchase; TIG's financial status and capitalization; and other stock purchases it made, both of Twitter stock and non-Twitter stock.

TIG opposes the motion and argues that Weaver's requests are irrelevant and that information about its business practices and trading model is protected under the California trade secrets privilege.

On October 1, 2012, after the hearing on the pending motion, the parties jointly moved for a stipulated protective order, which this court granted.[1]

## II. LEGAL STANDARDS

Rule 26(b) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." The relevant information "need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." Relevance under Rule 26(b) is broadly defined, "although it is not without ultimate and necessary boundaries."[2]

---

[1] *See* Docket No. 43.

[2] *See Gonzales v. Google Inc.*, 234 F.R.D. 674, 680 (N.D. Cal. 2006) (internal citations and quotations omitted).

2
Case No.: CV-12-01117 EJD (PSG)
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL RESPONSES

Because this case was brought in federal court pursuant to diversity jurisdiction, California state law governs substantive privileges during discovery.[3] California recognizes a privilege for trade secrets[4] but requires disclosure to a party "unless, after balancing the interests of both sides, [a court] concludes that under the particular circumstances of the case, no fraud or injustice would result from denying disclosure."[5] The availability of a protective order is a factor in weighing the parties' interests.[6]

The party claiming the trade secrets privilege has the initial burden of showing the material it seeks to protect is, in fact, a trade secret. The burden then shifts to the opposing party to show that "the information sought is relevant and necessary to the proof of, or defense against, a material element of one or more causes of action presented in the case."[7] At that point, "the burden is upon the trade secret claimant to demonstrate that an alternative to disclosure will not be unduly burdensome to the opposing side."[8]

### III. DISCUSSION

#### A. Relevance of the Requested Information

TIG argues that information about its financial status and other agreements into which it may have entered are irrelevant to Weaver's claim that TIG breached a binding contract.[9] Weaver also claims, however, that TIG engaged in fraud and breached the covenant of good faith and fair

---

[3] Fed. R. Evid. 501.

[4] Cal. Evid. Code § 1060.

[5] *Bridgestone/Firestone, Inc. v. Superior Court*, 7 Cal. App. 4th 1384, 1393 (1992).

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *See* Docket No. 38.

3
Case No.: CV-12-01117 EJD (PSG)
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL RESPONSES

dealing.[10] Information about TIG's practices in other deals and its financial status at the time it proposed the deal to Weaver is relevant to TIG's intent and whether it acted in good faith. Details of the side deal with Halcyon could shed light on whether TIG actually intended to purchase the shares or merely to rely on Twitter exercising its ROFR. Information about TIG's capitalization, prospective investors, and business structure would also illuminate its intent in its arrangement with Weaver and whether it pursued its obligations in good faith.

In light of the broad definition of relevance under Fed. R. Civ. P. 26(b), Weaver has shown that the discovery he seeks from TIG is relevant to his claims.

**B.  Trade Secret Privilege**

TIG argues that its trading model is a trade secret protected under California Evidence Code § 1060 and enjoys an absolute privilege from discovery. California defines a trade secret as "information, including a formula, pattern, compilation, program, device, method, technique, or process" that (1) "[d]erives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use" and (2) "[i]s the subject of efforts that are reasonable under the circumstances to maintain its secrecy."[11] The party claiming the privilege has the burden of showing a trade secret.[12] Courts then determine the extent of the privilege by balancing the need for secrecy on one side and the potential fraud or injustice that would result from failure to disclose on the other side.[13]

---

[10] *See* Docket No. 1.

[11] Cal. Civ. Code § 3426.1.

[12] *See Imax Corp. v. Cinema Technologies, Inc.*, 152 F.3d 1161, 1164 (9th Cir. 1998); *Bridgestone/Firestone, Inc.*, 9 Cal. App. 4th at 1393.

[13] *See Bridgestone/Firestone, Inc.*, 7 Cal. App. 4th at 1393.

4
Case No.: CV-12-01117 EJD (PSG)
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL RESPONSES

TIG has made, at the very least, a prima facie showing that its trading model is a trade secret under Section 3426.1.  As to the first requirement, TIG asserts that its trading model gives it a competitive advantage in the private market that has developed for stocks not listed on public exchanges.[14]  According to TIG, disclosure of its trading model would result in loss of its competitive advantage.[15]  TIG argues that, as a result, its trading model derives economic value from its secrecy.

TIG also meets the second requirement under Section 3426.1.  It requires investors to its fund to keep details and terms confidential, and it likewise contracts with its agents and representatives to maintain confidentiality.[16]  TIG thereby takes reasonable steps to maintain the secrecy of its trading model.

The burden thus shifts to Weaver to show that the trade secret material is "relevant and necessary" to prove an element of his case.[17]  Weaver claims that TIG engaged in fraud in its dealings with him so that information about TIG's trading model is relevant and necessary to show TIG's intent regarding the agreement.  Whatever the ultimate merits of Weaver's claim, based on this claim, the court agrees that Weaver is entitled to disclosure of TIG's business model.

In light of the parties' stipulated protective order and because Weaver has shown the relevance and his need for information about TIG's trading model, the court finds disclosure of the trading model under the protective order is appropriate.[18]

---

[14] *See* Docket No. 38 at 8.

[15] *See id.*

[16] *See* Docket No. 38-5.

[17] *Bridgestone/Firestone, Inc.*, 7 Cal. App. 4th at 1393; *see also Urbina v. Goodyear Tire & Rubber Co.*, Case No. CV 07-3705 CAS (CTx), 2009 WL 481655, at *5 (C.D. Cal. Feb. 23, 2009).

[18] *See Urbina*, 2009 WL 481655, at *5 (noting that disclosure of trade secret materials was appropriate in light of broad protective order already in place).

5
Case No.: CV-12-01117 EJD (PSG)
ORDER GRANTING PLAINTIFF'S MOTION TO COMPEL RESPONSES

### III. CONCLUSION

The court GRANTS Weaver's motion to compel further responses from TIG to his discovery requests. Accordingly,

IT IS HEREBY ORDERED that no later than October 30, 2012, TIG shall provide to Weaver substantive answers to his discovery requests.

IT IS FURTHER ORDERED that discovery of TIG's trading model shall be made pursuant to the parties' stipulated protective order.

**IT IS SO ORDERED.**

Dated: October 38, 2012

PAUL S. GREWAL
United States Magistrate Judge