**THOMPSON HINE LLP**
**MARANDA E. FRITZ** (appearing pro hac vice)
335 Madison Avenue
New York, New York 10017
Phone 212 908-3966
Fax 212 935-1166
Email: maranda.fritz@thompsonhine.com

MARK L. SMITH (Cal. Bar No. 213829)
CLYDE SNOW & SESSIONS
633 West Fifth Street
26th Floor
Los Angeles, California 90071
Email: msmith@clydesnow.com

*Attorneys for Defendant Halcyon Cabot Partners*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| EVAN WEAVER, | ) |
| Plaintiff, | ) Case No. 5:12-cv-1117 EJD |
| vs. | ) **DEFENDANT HALCYON CABOT PARTNERS, LTD'S NOTICE OF MOTION, MOTION, AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL ARBITRATION** |
| TAMPA INVESTMENT GROUP, LLC, HALCYON CABOT PARTNERS LTD., FELIX INVESTMENTS, LLC, and JOHN BIVONA, | ) |
| Defendants. | ) Dept: 4, 5th Floor<br>) Before: Honorable Edward J. Davila |

**NOTICE OF MOTION**

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD: NOTICE IS HEREBY GIVEN THAT, in Department 4 of the above-entitled Court, Defendant HALCYON CABOT PARTNERS, LTD will, and hereby does, bring this Motion to Compel Arbitration of claims asserted by Plaintiff EVAN WEAVER against HALCYON CABOT PARTNERS LLP. This motion is based on the Notice of Motion, the accompanying Memorandum of Points and Authorities, and all pleadings previously filed in this matter.

By this motion, defendant Halcyon seeks an order compelling arbitration of the plaintiff's claims against Halcyon.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I. INTRODUCTION**

This motion is predicated on the specific events that have occurred to this point in this proceeding. As discussed below, the plaintiff asserted claims against Halcyon based on a failed transaction in which Halycon had executed a document entitled "Summary of Transaction." That document set forth the basic terms of the proposed purchase of Twitter stock by Tampa Investment Group, and provided that Halcyon would use its best efforts "to facilitate the transaction and closing thereof."

In his First Amended Complaint, the plaintiff alleged that Halcyon breached that agreement, but then went the further step of asserting other claims not arising from that agreement. Specifically, the plaintiff affirmatively asserted that he was a customer of Halcyon's, that Halcyon owed certain duties to its customers, and that Halcyon had failed to satisfy those obligations that flowed to its customers. In response, Halycon moved to dismiss those claims, arguing that the plaintiff was a counterparty to an agreement but not a customer, and so Halycon's only duties and obligations to this plaintiff were as set forth in that agreement. This Court denied that motion to dismiss.

By virtue of this Court's decision, the plaintiff will now be permitted to pursue claims predicated on his status as a "customer" – claims that are squarely within the scope of the agreement to arbitrate that exists between a FINRA member firm and its "customers." Halcyon is therefore seeking to have this Court order that those claims are subject to arbitration and that, under these particular circumstances, the intertwined contractual claims are also subject to arbitration.

## II. FACTUAL BACKGROUND

This plaintiff initially filed a complaint against the individual and entities involved in his purported agreement to sell his Twitter stock, *i.e.*, Tampa Investment Group, Felix Investments and John Bivona. After proceeding with discovery, the plaintiff then sought to amend his complaint to add Halcyon Cabot Partners, the firm that was associated with the broker on the transaction, Paul McCabe, and which entered into a fee agreement in relation to that sale of stock. In that First Amended Complaint ("FAC"), the plaintiff asserted causes of action against all defendants for breach of a Letter Agreement and the Term Sheet, and for fraud and negligent misrepresentation. The plaintiff asserted other claims against Halcyon for breach of its duties, predicated on the claim that the plaintiff was Halcyon's customer and Halycon was plaintiff's "broker and investment advisor," and that there existed between them "a special relationship of trust and confidence. FAC ¶¶ 66, 101-105. The plaintiff also alleged that Halcyon was "registered with FINRA" and, as a FINRA member firm, owed duties to its customers which were breached. FAC ¶ 111.

Halcyon filed a motion to dismiss which sought *inter alia* the dismissal of the claim of breach of fiduciary duty. Halcyon cited the authorities that address the existence of such a fiduciary relationship and define the extent of the obligations that arise between an investor and a broker-dealer. Halcyon Cabot Motion to Dismiss [Doc. 80] at 11. Halcyon contended that the plaintiff was not a customer of the firm, that Halcyon's only relationship with the plaintiff was contractual, and that Halcyon complied with all of its obligations under the contract.

The plaintiff, in turn, responded by vehemently insisting that it *was* a client – not just a counterparty – of Halycon's and was owed all of the attendant duties that go along with that customer relationship. In the Introduction of his opposition brief, the plaintiff specifically asserts that he "was a client of Halcyon." Plaintiff's Memorandum in Opposition to Defendant Halcyon Cabot Partner's Motion to Dismiss ("Pl.Opp.") [Doc. 89] at 6. The plaintiff later asserts that "we must sweep away the bizarre suggestion that Weaver was not a 'client' of Halcyon." Pl.Opp. 12. The plaintiff also defends its claim of breach of fiduciary duty by relying at great length on the decisions that describe the relationship between a broker and *his customer.* Pl.Opp. 18-23.

Plaintiff prevailed on the motion.

### III. ARGUMENT

**A. BASED ON THE PLAINTIFF'S CONTENTIONS, AND THIS COURT'S RULING, ARBITRATION OF THE DISPUTE BETWEEN EVAN WEAVER AND HALCYON SHOULD BE COMPELLED**

Having aggressively and successfully asserted that he was a customer and client of Halcyon Cabot Partners, such that those claims against Halcyon will now proceed and be adjudicated, the plaintiff is now subject to the same arbitration procedures that apply to every customer of Halcyon, and Halcyon is entitled to assert its right to arbitrate the dispute with its customers.

**1. Halcyon and its Customers Are Required to Arbitrate Their Disputes With FINRA Member Firm Halcyon**

Under the FINRA Code of Arbitration, a FINRA member firm must arbitrate any dispute that is between *a customer* and a member or associated person of a member, and arises "in connection with the business activities of the member or associated person." FINRA Rule 12200.[1] Under FINRA Rule 12200, not only customers but also "members and associated

---

[1] FINRA Rule 12200 also includes language regarding the customer's agreement or request to arbitrate, and usually a customer has executed a new account form that contains an arbitration provision. Here, although there was no

3

persons have independent rights to compel arbitration of disputes with customers." Ronay Family Ltd. P'ship v. Tweed, 216 Cal. App. 4th 830, 846 (Cal. App. 4th Dist. 2013) (confirming that associated person may compel arbitration of a customer dispute).

Pursuant to and in accordance with those FINRA provisions, all of Halcyon's registered representatives and its customers are subject to arbitration provisions.[2]

### 2.  Relevant Authorities Strongly Favor Arbitration

The preference for arbitration of disputes, particularly in the securities context, is undoubtedly well known to this Court. The Federal Arbitration Act reflects the strong federal policy in favor of arbitration, and the Supreme Court has repeatedly emphasized that all doubts and ambiguities as to arbitrability should be "resolved in favor of coverage." United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83 (1960); Mitsubishi Motors v. Soler Chrysler Plymouth Inc., 473 U.S. 614 (1985).

In the securities context, "courts have fashioned a two-part test that must be satisfied to trigger the [FINRA] arbitration requirement. First, the claim must involve a dispute between either a [FINRA]-member and a customer, or an associated person and a customer. Second, the dispute must arise in connection with the activities of the member or in connection with the business activities of the associated person." O.N. Equity Sales, 504 F. Supp. 2d at 916 (citing World Grp. Sec., Inc. v. Sanders, No. 06-cv-107 PGC, 2006 U.S. Dist. LEXIS 28733, at *4 (D. Utah May 8, 2006)).

### 3. Plaintiff is Estopped from Asserting That He Was Not a Customer of Halcyon Who is Required to Arbitrate

During the litigation that has occurred to date, this plaintiff has made plain that he is asserting claims against Halcyon based not only on the contract, the "Fee Agreement," but also

---

new account agreement, that prong of FINRA Rule 12200 is satisfied because the plaintiff insists that he was a customer, and the FINRA Code constitutes a "written agreement" between the firm and its customers to arbitrate their claims.  See O.N.Equity Sales Co. v. Steinke, 504 F. Supp. 2d 913, 916 (C.D. Cal. 2007); NDX Advisors Inc. v. Advisory Fin. Consultants Inc., No. C11-3234 SBA, 2012 U.S. Dist. LEXIS 176977, at *7 (N.D. Cal.  Dec. 12, 2012).  See also Vestax Sec.Corp. v. McWood, 280 F.3d 1078, 1081-82 (6th Cir. 2002).

....

based on duties and obligations that were, he argues, owed to him because he was a "customer" of a FINRA member firm. Halycon responded by asserting that the plaintiff was *not* a customer of the firm, that Halcyon had only a contractual relationship with the plaintiff and was serving essentially as an executing or clearing broker, facilitating a transaction the terms of which were negotiated by and between others. Halcyon Motion to Dismiss 11-12. In that motion, Halcyon argued that the plaintiff did not have an account at Halcyon, was not one of its clients, and that its duties in relation to this particular transaction were entirely contractual.

The plaintiff's response was, suffice to say, adamant. The plaintiff sought to "sweep away the bizarre suggestion that Weaver was not a 'client' of Halcyon." Pl.Opp. 12. The plaintiff alleged that he was a client of the firm and of the broker, that Halcyon failed to satisfy its obligations to its "client," and that Halcyon was also liable for the particular acts and statements of its broker, Paul McCabe. Pl.Opp. 12-14. And, when the plaintiff addressed the specific issue of a claimed breach of fiduciary, he launched with vigor into a lengthy discussion of those authorities that discuss the extent of a broker's duty to his "customer." Pl.Opp. 19. In page after page, to illustrate the supposed error of the defendant's position, the plaintiff laid out authorities that specifically apply where there is a "broker-customer" relationship.

The plaintiff's efforts were successful: Halycon's motion to dismiss those claims, including the claim for breach of fiduciary duty, were denied. As a result, the plaintiff's allegation that Halcyon failed to satisfy its obligations to him as a customer will proceed. And those claims that will now be adjudicated are the quintessential kind of claims by a customer against a broker-dealer that are subject to arbitration, and that are considered and resolved in FINRA arbitration proceedings every day. Here, because plaintiff has himself insisted that he stands in a customer relationship to Halcyon, because he seeks the benefit of that relationship, and because was successful in opposing the motion to dismiss on that basis, he is estopped from denying that he is a customer and that his dispute is arbitrable.

That issue of estoppel is one of a number of bases in this jurisdiction on which even a nonsignatory to an arbitration agreement may be compelled to arbitrate a claim. That principle

5

of estoppel "'precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes.'"  Murphy v. DirecTV Inc.,  724 F.3d 1218, 1229 (9th Cir. 2013) (citation omitted).

> This rule reflects the policy that a plaintiff may not, on the one hand, seek to hold the nonsignatory liable pursuant to duties imposed by the agreement, which contains an arbitration provision, but on the other hand deny arbitration's applicability because the defendant is a non-signatory. …
>
> [E]quitable estoppel applies when the plaintiff's claims 'are intimately founded in and intertwined with the underlying contract obligations.'  'This requirement comports with and indeed derives from the very purpose of the doctrine: to prevent a party from using the terms or obligations of an agreement as the basis for his claims against a nonsignatory while at the same time refusing to arbitrate with the nonsignatory under another clause of the same agreement.

Id. at 1229-30

See Xinhua Holdings Ltd. v. Elec. Recyclers Int'l, Inc. No. 13-cv-1409 AWI SKO, 2013 U.S. Dist. LEXIS 180512 (E.D. Cal. Dec. 24, 2013); JSM Tuscany, LLC v. Superior Court, 193 Cal. App. 4th 1222, 1238 (Cal. App. 2d Dist. 2011).  See also  Tamsco Props., LLC v. Loral Langemeier, No. 09-cv-3086-GEB-EFB, 2013 U.S. Dist. LEXIS 8646, at *13 (E.D. Cal. Jan. 18, 2013).

Where a plaintiff "knowingly exploits" an agreement that contains an arbitration clause, despite not having signed that agreement, equitable estoppel is applicable.  Mundi v Union Sec. Life Ins. Co., 555 F.3d 1042 (9th Cir. 2009). See In re Carrier IQ, Inc. Consumer Privacy Litig., No. C-12-md-2330 EMC, 2014 U.S. Dist. LEXIS 42624, at *40 (N.D. Cal. Mar. 28, 2014) (doctrine of equitable estoppel "is thus predicated on the unfairness of allowing a party to rely on part of a contract in asserting a claim while, at the same time, disavowing another part of the same contract").

In <u>Vestax</u>, for example, the court considered a similar issue involving a broker dealer. There the investors dealt with certain registered representatives of the brokerage firm, lost money, and filed an arbitration. The firm resisted the effort to bring the matter to arbitration because the investors had no account with the firm, the firm had received no commission, the investors could not be considered "customers' of the firm, and no particular arbitration agreement existed between them. The court compelled arbitration, finding that the investors were "customers" and that the [then NASD] Code of Arbitration Procedure provided for arbitration of customer disputes "even in the absence of a direct transactional relationship with the firm." <u>Id</u>. at 1081.

Here, this plaintiff seeks "to invoke the duties and obligations" that Halcyon has to its *customers*, and the duties that Halcyon has as a FINRA member firm, while avoiding the arbitration process that is a component of the FINRA membership and the relationship with a customer. Those obligations that are the predicate for the plaintiff's claims are "inextricably bound up with" the FINRA arbitration requirement that dictates the forum in which disputes between a broker-dealer and a customer are considered and resolved. Therefore, given the plaintiff's contentions, and the plaintiff's success in opposition to the motion to dismiss, the plaintiff is estopped from denying that he was a customer of the firm and, as a customer, is obligated to arbitrate his dispute with Halcyon.

### 4. This Dispute is Arbitrable Because it Arises Out of the Business Activities of the FINRA Member Firm

Arbitration is also appropriate because this dispute arises from precisely the circumstances that FINRA arbitration is intended to embrace. This plaintiff claims that a transaction that involved a Halcyon broker was mishandled, that the Halcyon broker made inaccurate statements, and that Halcyon is liable for the conduct of that broker. Those claims, including a claim for failure to supervise, "clearly 'arise in connection with the business'" of the

7

broker-dealer for the purposes of FINRA Rule 12200. *See, e.g.,* USAllianz Secs., Inc. v. S. Mich. Bancorp, Inc., 290 F. Supp. 2d 827 (W.D. Mich. 2003); Sanders, 2006 U.S. Dist. LEXIS 28733; Vestax, 280 F.3d 1078.  While Halcyon had viewed the interaction as being contractual in nature, the plaintiff contends that the plaintiff and Halcyon had a broker-customer relationship and it was his view that prevailed in relation to the motion to dismiss.  Accordingly, the plaintiff is himself held to that contention, and the plaintiff should be compelled to arbitrate that dispute.

**IV.  CONCLUSION**

This plaintiff has successfully maintained that he was a customer of Halcyon, and seeks to assert claims that derive from that purported relationship and from Halcyon's status as a FINRA member firm.  By virtue of that assertion, and the requisites of the FINRA Code of Arbitration Procedure, those claims must be submitted to arbitration.  This Court should, therefore, compel arbitration of the plaintiff's claims against Halcyon.

Dated:  May 28, 2014

                                          Respectfully submitted,

                                          s/
**THOMPSON HINE LLP**
**MARANDA E. FRITZ** (appearing pro hac vice)
335 Madison Avenue
New York, New York 10017
Phone 212 908-3966
Fax 212 935-1166
Email: maranda.fritz@thompsonhine.com

MARK L. SMITH (Cal. Bar No. 213829)
CLYDE SNOW & SESSIONS
633 West Fifth Street
26th Floor
Los Angeles, California 90071
Email: msmith@clydesnow.com

*Attorney for Defendant Halcyon Cabot Partners*