UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| EVAN WEAVER, | Case No.: 5:12-CV-01117-EJD |
| Plaintiff, | **ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION** |
| v. | |
| TAMPA INVESTMENT GROUP, LLC, et al., | **[Re: Docket No. 115]** |
| Defendants. | |

Plaintiff Evan Weaver ("Weaver") brings this instant action against Defendant Halcyon Cabot Partners Ltd. ("Halcyon"). Presently before this Court is Halcyon's Motion to Compel Arbitration (the "Motion") of Weaver's claims. See Docket Item No. 115. Weaver opposed the Motion. The Court found this matter suitable for decision without oral argument and vacated the associated hearing date.

The Court has original jurisdiction pursuant to 28 U.S.C. § 1332. Having reviewed the parties' briefing, the court DENIES Defendants Motion to Compel Arbitration for the reasons explained below.

**I. Background**

On February 2, 2012, Weaver originally filed a complaint against Defendant Tampa Investment Group ("Tampa"), for contract and fraud claims involving Weaver's Twitter stock with an associated loss of over seven million dollars. See Docket Item No. 1. On December 20, 2012,

1
Case No.: 5:12-CV-01117-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

after engaging in discovery, Weaver filed an amended complaint ("FAC") adding Defendants Felix Investments ("Felix"), John Bivona ("Bivona"), and Halcyon. See Dkt. No. 59. In that FAC, Weaver alleged that Tampa and Felix worked with Halcyon and Halcyon's registered representative, Paul McCabe, to purchase pre-IPO Twitter stocks, and to generate commission. Id. at ¶ 6-8. In addition, Weaver alleged that McCabe contacted Weaver and represented that he had a buyer for Weaver's shares, Tampa, who was "ready to move" if the deal cleared Twitter's right of first refusal ("ROFR"). Id. at ¶ 30. Weaver alleged that Weaver, Tampa and Halcyon executed the "Term Sheet" (together with the Letter Agreement), which set forth the exact number of shares to be sold and the exact price to be paid. Id. at ¶ 40. Finally, Weaver alleged that Tampa, Halcyon and Felix fraudulently induced Weaver to contract to sell his Twitter shares. Id. at 8.

On March 05, 2013, Halcyon filed for a Motion to Dismiss Weaver's FAC. Dkt. No. 80. On March 19, 2013, Weaver responded to Halcyon's Motion to Dismiss Weaver's FAC. Dkt. No. 89. On March 26, 2013, Halcyon replied in support of its Motion to Dismiss Weaver's FAC. Dkt. No. 93. On March 31, 2013, this Court Denied the Motion to Dismiss Weaver's FAC. Dkt. No. 104. On April 22, 2014, Halcyon filed an Answer to Weaver's FAC. Dkt. No. 110. On May 28, 2014, Halcyon filed a Motion to Compel Arbitration. Dkt. No. 115. On June 11, 2014, Weaver responded to Halcyon's Motion to Compel Arbitration. Dkt. No. 117. Finally, on June 18, 2014, Halcyon replied in support of its Motion to Compel Arbitration. Dkt. No. 118.

## II. Legal Standard

Under the Federal Arbitration Act, "A party to a valid arbitration agreement may 'petition any United States district court for an order directing that such arbitration proceed in the manner provided for in such agreement.'" Lifescan, Inc. v. Premier Diabetic Servs., Inc., 363 F.3d 1010, 1012 (9th Cir. 2004) (quoting 9 U.S.C. § 4). When such a request is made, the court must determine whether an arbitration agreement exists and whether it encompasses the dispute at issue. See id. at 1012; see also Chiron Corp. v. Ortho Diagnostic Sys., Inc., 207 F.3d 1126, 1130 (9th Cir. 2000). "[A]ny doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983).

A motion to compel arbitration should be denied if "it may be said with positive assurance

that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., Inc. v. Commc'n Workers, 475 U.S. 643, 650 (1986). Moreover, arbitration should be denied if the court finds "grounds as exist at law or in equity for the revocation of any contract," such as fraud, duress or unconscionability. 9 U.S.C. § 2; Rent-A-Center, West, Inc. v. Jackson, 130 S. Ct. 2772, 2776 (2010). The court applies ordinary state-law principles governing the formation of contracts to carry out this task. Davis v. O'Melveny & Myers, 485 F.3d 1066, 1072 (9th Cir. 2007).

### III. Discussion

**a. FINRA Rule 12200**

Financial Industry Regulatory Authority's ("FINRA") Customer Code governs arbitration between customers of FINRA members and FINRA members. Rule 12200 provides:

> (1) Arbitration under the Code is either:
>
> > (a) required by a written agreement, or
> >
> > (b) requested by the customer;
>
> (2) the dispute is between a customer and a member or associated person of a member; and
>
> (3) the dispute arises in connection with the business activities of the member or the associated person, except disputes involving the insurance business activities of a member that is also an insurance company.

Halcyon argues that because Weaver claims he is a customer, then Weaver "is now subject to the same arbitration procedures that apply to every customer of Halcyon." See Dkt. No. 115 at 3-4. Specifically, Halcyon argues that it is entitled to assert its right to arbitrate the dispute with its customers under the FINRA Rule 12200. See id.

Weaver argues that while there is a Fee Agreement between Weaver and Halcyon, there is no arbitration clause in the Fee Agreement. See Dkt. No. 117 at 4. In addition, Weaver argues that the Fee Agreement explicitly states that "the exclusive venue for disputes arising out of or relating to this agreement shall be the state and federal courts in Santa Clara County, California." Dkt. No. 59 at 34. As such, Weaver argues that absent an arbitration clause, Rule 12200 only "requires FINRA members like [Halcyon] to arbitrate disputes arising out of their business activities at the

3
Case No.: 5:12-CV-01117-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

request of a 'customer.'" Goldman, Sachs & Co. v. City of Reno, 747 F.3d 733, 739 (9th Cir. 2014). Dkt. No. 117 at 4. Therefore, Weaver concludes that FINRA's rule cannot compel him to arbitrate absent a written agreement with an arbitration clause or at Weaver's request. See Dkt. No. 117 at 7-8.

Under California law, "[w]hen a petition to compel arbitration is filed and accompanied by prima facie evidence of a written agreement to arbitrate the controversy, the court itself must determine whether the agreement exists and, if any defense to its enforcement is raised, whether it is enforceable." Rosenthal v. Great W. Fin. Sec. Corp., 14 Cal. 4th 394 (1996). "Because the existence of the agreement is a statutory prerequisite to granting the petition, the petitioner bears the burden of proving its existence by a preponderance of the evidence." Id.

Here, Halcyon provides no evidence of a written agreement to arbitrate the dispute with Weaver. Notably, Halcyon does not identify a written agreement with an arbitration provision, rather Halcyon argues that it satisfies the "written agreement" prong of FINRA's Rule 12200 because Weaver was a customer of Halcyon, a FINRA member firm, and a Fee Agreement exists between them. See Dkt. No. 115 at 3-4.

But even if Weaver is considered to be a Halcyon customer, Halcyon does not meet the first prong of FINRA Rule 12200 because there is no evidence of a written agreement to arbitrate, and Weaver is not seeking arbitration. For these reasons, Halcyon fails to meet the statutory prerequisite to prove the existence of a written agreement to arbitrate by a preponderance of the evidence and, as such, cannot compel Weaver to arbitrate.

Accordingly, the Court DENIES Halcyon's Motion to the extent it is based on the existence of a written agreement.

**b. Estoppel**

Halcyon argues that Weaver is estopped from denying that he was a customer of the firm and, as a customer, is obligated to arbitrate his dispute with Halcyon. Dkt. No. 115 at 7:17-20. Specifically, Halcyon argues that the principle of estoppel "precludes a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." Murphy v. DirecTV Inc., 724 F.3d 1218, 1229 (9th Cir. 2013). Id. at 6:1-3. However, Weaver

4
Case No.: 5:12-CV-01117-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION

argues that principles of estoppel are "inapplicable here because there is no underlying customer agreement to arbitrate." See Dkt. No. 117 at 8. Weaver agrees that there is a Fee Agreement, but no "written agreement" to arbitrate. Id. Therefore, Weaver argues that without a written agreement to arbitrate, there is "no conceivable basis to apply estoppel." Id. at 9.

When considering if estoppel can be used to compel arbitration, courts draw a distinction between claims that rely on the terms of a contract with an arbitration clause and claims that merely presume the existence of the contract. See McArthur v. McArthur, 224 Cal. App. 4th 651 (2014). Arbitration is not compelled when claims merely presume the existence of the contract. Id. (affirming the order denying Kristi's motion to compel arbitration, because Pamela was neither a signatory to the arbitration clause, nor did she seek benefits under the 2011 trust instrument. Instead, Pamela sought benefits of the 2001 trust, which trust did not contain an arbitration clause.); see also QPro Inc. v. RTD Quality Servs. USA, Inc., 761 F. Supp. 2d 492 (S.D. Tex. 2011) (denying RTD's motion to compel arbitration because "the claim does not depend on the terms of [the lease] agreement, such that QPro is simultaneously invoking the lease yet refusing to comply with the arbitration clause it contains.").

Here, there is no evidence of a written agreement to arbitrate between Weaver and Halcyon. Absent an agreement to arbitrate, there can be no estoppel, and the Court DENIES the Motion to Compel Arbitration to the extent it is based on estoppel.

**c. Public Policy**

Halcyon argues that there is a strong public policy favoring arbitration. See Dkt. No. 115 at 4. Specifically, Halcyon cites that "national policy favor[s] arbitration with just the limited review needed to maintain arbitration's essential virtue of resolving disputes straightaway." Kyocera Corp. v. Prudential-Bache T Servs., 341 F.3d 987 (9th Cir. 2003). "Any other reading opens the door to the full-bore legal and evidentiary appeals that can rende[r] informal arbitration merely a prelude to a more cumbersome and time-consuming judicial review process." Id. However, the courts' challenge when it comes to deciding the level of judicial intervention needed is to strike the right balance so as to enforce valid agreements to arbitrate, yet preserve the traditional role courts enjoy in ensuring procedural fairness and public policy. See id.

Weaver argues that while there is a public policy favoring arbitration, FINRA is a non-governmental agency, and as such, its authority to compel arbitration must have some contractual basis.  See Dkt. No. 115 at 9.  The court in McArthur held that, "the strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement or who have not authorized anyone to act for them in executing such an agreement."  McArthur, 224 Cal. App. 4th at 663.

Here, Halcyon has not provided a valid written agreement to arbitrate and admits there is no new "customer agreement."  See Dkt. No. 115 at 3-4.  Here, similar to McArthur, a strong public policy does not act to compel a customer to arbitrate disputes that such customer never agreed to resolve in arbitration.  Therefore, the Court fails to find any merit to Halcyon's public policy argument and DENIES Halcyon's Motion to Compel Arbitration on that ground.

## IV. Conclusion

For all the reasons stated above, the Court dismisses Halcyon's Motion to Compel Arbitration.

**IT IS SO ORDERED.**

Dated: September 23, 2013

_____
EDWARD J. DAVILA
United States District Judge

Case No.: 5:12-CV-01117-EJD
ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION